# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**RONALD W. BUSH,**
     **Petitioner,**

**v.**                                    **No. 3:03cv344/RV/MD**

**JAMES V. CROSBY,**
     **Respondent.**

_____

## REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).   Respondent has filed a response (doc. 5) to which petitioner has replied (doc. 10).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).   After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY[1]

On October 7, 1999 the home of Sandra Smith and her son, Matthew Elliot, was burglarized while Ms. Smith and Mr. Elliot were away.  Mr. Elliot had left home at about 10:00 that morning and returned shortly after noon.  On arriving home he discovered that the front door had been kicked in and that a TV, a VCR, and a cable box were missing.  At 11:30 that morning the petitioner pawned the same TV and VCR.  Petitioner was charged in the Circuit Court of Escambia County, Florida with burglary, theft, and dealing in stolen property.

There were no eye witnesses to the burglary.  At trial Ms. Smith and Mr. Elliot testified to the fact of the burglary and theft, and the parties stipulated that petitioner pawned the TV and VCR under his own name at 11:30 that morning (doc. 5, exh. G, p. 84).[2]  A defense witness, Ms. Odom, testified that petitioner had spent the previous night with her, and that she had driven him to her workplace, a bar that she cleaned in the morning.  Sometime between 10:00 and 11:30 that morning she saw petitioner talking to two strangers in a pick-up truck behind the bar.  Shortly thereafter petitioner asked to borrow her car, and Ms. Odom saw a TV and something else in her car, neither of which had been there earlier.

The jury acquitted petitioner of burglary and theft, but found him guilty of dealing in stolen property (doc. 5, exh. H).  He was sentenced to 30 years imprisonment as an habitual felony offender.  Petitioner appealed his conviction and

---

[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt.  *Id.* at 319.  The proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, the federal court believes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.*  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

[2]Hereafter all references to exhibits will be to doc. 5 unless otherwise noted.

sentence, and subsequently filed two motions for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 and a petition for writ of habeas corpus in the state courts, and appealed each adverse result.  He was unsuccessful in all respects, and now seeks habeas relief in this court.

## DISCUSSION

### Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas

**corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme

Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).   If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, --- U.S. ---, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which

the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."

*Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## Exhaustion and Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a

citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.

Prior to *Duncan*, the Eleventh Circuit broadly interpreted the "fair presentation" requirement.  *See*, *e.g.*, *Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991)

---

[4]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

(finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted,

*i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is

more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

<u>Petitioner's Claims</u>

Petitioner presents five distinct grounds for relief.  They will be discussed in the order presented.

1.   <u>Fundamental court error - denial of motion for acquittal.</u>

For his first ground for relief petitioner contends that the court erred in not granting his motion for acquittal.  He asserts that the case against him was purely circumstantial and that the state's proof did not exclude all other hypotheses of innocence.  By failing to adhere to its own rule concerning the sufficiency of the evidence to sustain a conviction in a circumstantial evidence case, the trial court deprived petitioner of his right to due process.  Respondent contends that petitioner committed a procedural default on his federal claim because he failed to exhaust it before the state courts, and now under state rules his opportunity to do so has expired.  Respondent additionally asserts that the claim presents only an issue of state law which is not cognizable under federal habeas review.

While petitioner concedes that issues of state law cannot form the basis of federal habeas relief, (doc. 1, Mem. of Law, p. 6), he contends that the instant claim can be elevated into a federal due process issue by a showing of exceptional circumstances wherein the state court has ignored its own rule, and the instant federal petition arguably raises a federal due process issue.  However, no such federal claim was raised in the state courts.  In his direct appeal petitioner contended that the trial court erred in not granting his motion for acquittal.  He relied on *Valdez*

*v. State*, 504 So.2d 9 (Fla. 2nd DCA 1986), which held that circumstantial evidence can support a conviction only if it is consistent with guilt and inconsistent with any other reasonable hypothesis of innocence (exh. M, pp. 10-17).  Petitioner explained that the state presented no evidence tying him to the burglary and theft, and only circumstantial evidence that he dealt in stolen property.  He further argued that because the evidence overall was consistent with the defense theory--that petitioner had purchased the TV and VCR from two strangers--he could not be convicted by circumstantial evidence.  However, petitioner's brief did not make a single reference to the United States Constitution or any federal statute, and he cited no federal cases in support of his argument.  His position was grounded solely on state law--Florida law on circumstantial evidence.

In Florida, where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. *McArthur v. State*, 351 So.2d 976 n.12 (Fla. 1977). The claim petitioner raised under this state-law rule is distinct from a sufficiency of the evidence claim arising under the Constitution.  The question under the federal constitutional standard is whether, after assessing the evidence in the light most favorable to the prosecution, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  As respondent points out, the requirement that the state preclude all possible hypotheses of innocence in a circumstantial evidence case is not required by the federal constitution.  Thus, even assuming, without deciding, that identical standards might overcome a petitioner's failure to identify his claim as federal, Florida's rule regarding circumstantial evidence is not identical to the *Jackson* standard. *See, e.g., Howell v. Mississippi*, 534 U.S. ---, 125 S.Ct. 856, 859, 160 L.Ed.2d 873 (Jan. 24, 2005) (Writ of certiorari to the Supreme Court of Mississippi would be dismissed as improvidently granted, where petitioner did not properly present his claim in that court as one arising under federal law; in the relevant argument,

petitioner did not cite the Constitution or even any cases directly construing it, but presented a daisy chain of citations, only the last of which concerned a federal claim; rejecting petitioner's argument that he raised his federal claim by implication because the state-law rule on which he relied on direct appeal was identical--"Assuming, without deciding, that identical standards might overcome a petitioner's failure to identify his claim as federal, Mississippi's rule regarding lesser-included-offense instructions is not identical to [the federal standard]"). Petitioner's newfound claim of a due process violation, like any other federal constitutional claim, must have been fairly presented to the state courts in order for this court to review it. Petitioner has obviously not so presented this federally based claim, and the state courts would now find the claim to be procedurally barred. In such a case there is a procedural default for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. 2546.

In his reply to the respondent's argument, petitioner contends that he is entitled to review here because (1) if this court does not consider his claim, his privilege of the writ habeas corpus will have been effectively suspended in violation of Article I, Section 9 of the United States Constitution, (2) his appellate counsel was ineffective and he is entitled to present an ineffective assistance of counsel claim here on that basis, and (3) he is actually innocent, thereby excusing his failure to present a federal claim to the state court. Petitioner cannot prevail on any of these arguments. There is no suspension clause violation so long as a prisoner has the opportunity to present his habeas argument in an appropriate court. *Accord, Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (holding that AEDPA restrictions on successive habeas petitions do not violate suspension clause); *Molo v. Johnson*, 207 F.3d 773 (5th Cir. 2000) (holding that AEDPA one-year statute of limitations does not violate the suspension clause because nothing prevents a prisoner from presenting his habeas petition within the prescribed time). Petitioner had every opportunity to present this issue to the state court for resolution. The fact that he failed to do so did not suspend his access to habeas relief.

If indeed petitioner had a viable federal claim that could have been presented to the state court, which this court does not find, he may have had a viable ineffective assistance of counsel claim when his appellate attorney failed to present it.  That ineffective assistance of counsel claim, however, must have also been presented to the state court in petitioner's motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850.  Petitioner failed to present it there, and this court therefore cannot consider it.  Finally, although petitioner says he is "actually innocent," the facts adduced at trial, although circumstantial, support the jury's verdict of guilt, and petitioner has not presented this court with the "new reliable evidence" required by *Schlup, supra*.

Petitioner did not present a federal claim on this issue to the state court for resolution, and he has not advanced any legal cause for his failure to do so. Although he now asks for this court to abate this proceeding so that he can go back to state court, Florida law clearly precludes such an effort.  Petitioner is not entitled to federal habeas review on this claim.

    2.   <u>Improper prosecution argument.</u>

As his second ground for relief petitioner contends that the prosecutor's comments in closing argument were so inflammatory and prejudicial, and so wrongly stated the law, that his right to a fair trial was abridged. Specifically, petitioner asserts that the prosecutor: (1) misstated the law on the jury's right to make certain inferences; (2) wrongfully characterized Ms. Odom as a defense witness; (3) shifted the burden to the defense by implying that the defense should have proven who was in the pick-up truck; and, (4) improperly called the defense theory a "fill in the blank defense," thereby commenting on petitioner's exercise of his Fifth Amendment right not to testify.  Defense counsel objected to each of these comments, and moved for mistrial.  The objections were overruled and the mistrial was denied.

This issue was presented to the state court in petitioner's direct appeal.  The respondent argues, however, that no federal claim was presented, and that the issue

is therefore defaulted.  Respondent is again correct.  In his appellate brief, petitioner made the following essential points: (1) *Crowley v. State*, 558 So.2d 529 (Fla. 4th DCA 1990), *Davis v. State*, 90 So.2d 629 (Fla. 1956), *Eberhart v. State*, 550 So.2d 102 (Fla. 1st DCA 1989, and *Romero v. State*, 435 So.2d 318 all hold that it is constitutional error to remark in such a way as to place the burden on a defendant of proving his innocence, or to comment on his right to remain silent; (2) *Rosso v. State*, 505 So.2d 611 (Fla. 3rd DCA 1987) forbids the prosecution from inflaming the minds of the jurors; (3) numerous other Florida cases forbid prosecutorial remarks that demean the defense in such a way as to make it seem that the defense has to prove something (exh. M, pp. 20-27).  The seminal decision in this line of cases was *Davis, supra.*  There the Florida Supreme Court reasoned that when a judge commented, at sentencing, that the defendant had not testified, "a privilege which our organic law guarantees to him without adverse implications," a new trial was required.  90 So.2d at 632.  The court did not discuss the basis for its finding other than referring to "organic law," and specifically did not cite the United States Constitution or any federal decision.  Although *Romero, supra,* mentioned the constitution, it did not specify which one.  The Florida Constitution mirrors the United States Constitution in providing due process rights, including protection against self- incrimination.  Fla. Constitution. Art. I, §§ 9, 16.  Finally, nowhere in petitioner's brief on appeal did he mention the United States Constitution, or a specific federal right. The only federal cases mentioned were contained in a quote from the *Rosso* decision, and they were there mentioned for the proposition that the prosecution should seek justice, not a victory, and that a prosecutor should not strike foul blows (exh. M, p. 22).

    "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  That is precisely the case here.  Petitioner's state appellate brief essentially mirrored the brief discussed by the Eleventh Circuit in

*Zeigler v. Crosby, supra.*  Petitioner's claim must therefore fail, because he did not fairly present the state court with a claim for relief under federal law, and has not advanced sufficient legal cause for his failure to do so.  Petitioner is not entitled to federal habeas relief on this ground.

3.  <u>Denial of right to jury trial on sentencing factor.</u>

For his third claim petitioner contends that he was unlawfully habitualized because the court, not the jury, found the necessary facts to impose such a sentence.  This issue was raised on appeal.  The appellate court affirmed without opinion, so it is appropriate for this court to consider the merits.

The maximum sentence for dealing in stolen property under Florida law is 15 years, but petitioner was sentenced to 30 years under the habitual felony offender statute that provides for a sentence of up to 30 years.  In order for a defendant to be habitualized in Florida, the court (not a jury) must find by a preponderance of the evidence that (1) the defendant to be sentenced has at least two prior felony convictions, (2) the current conviction is based on acts performed either (a) while serving a sentence or under supervision pursuant to a sentence, or (b) within five years of his release from prison or other supervision, and (3) neither prior qualifying felony conviction has been pardoned or judicially set aside.  Fla. Stat. § § 775.084(1)(a) and (3)(a).  Petitioner bases his claim on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that only a jury can find facts necessary to impose a sentence above the statutory maximum.

In *Apprendi* the court held that a jury, not a judge, was constitutionally required to make findings that affected sentencing.  The particular factors involved in *Apprendi* came from New Jersey's hate-crime statute, which mandated a higher sentence if the defendant acted with the intent to intimidate a victim based on race, color, gender, handicap, religion, sexual orientation or ethnicity.  The *Apprendi* Court reasoned that where the defendant fired shots into the home of an African American family, and where he was indicted and convicted only for possessing a firearm, it was constitutional error for the judge to then take evidence and find that he was

guilty of a hate crime based on racial malice.  That latter determination, the Court found, is part of a separate offense from merely possessing a firearm, and the jury, not the judge, must make the finding on defendant's state of mind in that circumstance.  The court then reiterated a statement it had first made in *Jones v. United States*, 526 U.S. 227, 243, 119 S.Ct. 1215, 1224, 143 L.Ed.2d 311, fn. 6 (1999): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and must be proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490, 119 S.Ct. at 2362-63.

In *Jones, supra*, the court held that the sentence of a defendant found guilty of carjacking with a firearm was unconstitutionally enhanced where the judge alone found the aggravating factor of serious bodily injury.  The court reasoned that the federal carjacking statute actually contained three different offenses (carjacking, carjacking with serious bodily injury, and carjacking with death), that each carried a different sentence, and that the offense for which the defendant was sentenced must first be charged and determined by a jury.  The *Jones* court surveyed its prior decisions, and distinguished *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).  There, an alien was indicted and found guilty of reentry after deportation, which carried a sentence of up to two years.  His sentence was enhanced under a section of the statute providing for a sentence of up to 20 years if the defendant's prior predicate convictions included an aggravated felony.  18 U.S.C. § 1326.  The *Almendarez-Torres* Court found that the prior conviction was not an element of the crime charged, and approved the sentence enhancement, even though the judge alone determined the existence of the predicate prior aggravated felony.  The Court reasoned that (1) the relevant subject matter of the enhancement statute was recidivism, which is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence," 523 U.S. at 244, 118 S.Ct. at 1230, (2) making a prior conviction an element of the current offense "carries a risk of unfair prejudice," 523 U.S. at 235, 188 S.Ct. at 1226, because the jury would

then necessarily become aware of the prior convictions, and Congress would not have wanted to "create this kind of unfairness in respect of facts that are almost never contested," *id.*, and (3) the existence of a prior conviction "'does not relate to the commission of the offense *but goes to the punishment only.*'"  523 U.S. at 245, 118 S.Ct. at 1231, quoting *Graham v. West Virginia,* 224 U.S. 616, 624, 32 S.Ct. 583, 585-86, 56 L.Ed. 917 (1912) (emphasis on original).  The *Jones* Court found that the question of whether there was bodily injury, and to what degree, and whether such injury was caused by the defendant, did not meet any of the *Almendarez-Torres* reasons for allowing a judge to determine sentencing factors, and should have been charged and submitted to a jury.  Significantly, neither *Apprendi* nor *Jones* receded from or overruled *Almendarez-Torres.*

The instant case closely parallels *Almenderez-Torres*, not *Jones* or *Apprendi*. Petitioner here concedes, and *Apprendi* instructs, that the judge alone can make the factual finding of the existence of the prior convictions.  He argues, however, that the other facts - whether he was in custody or had been released less than five years before the offense, and whether he had been pardoned - should have been submitted to the jury.  Those facts, however, do not relate to the charged crime.  They are distinct in time, and relate appropriately to punishment.  The court was not asked to determine the state of mind of the defendant at the time of the crime (*Apprendi*), or whether serious bodily injury resulted (*Jones*).  Rather, the facts concerning release time and pardon are hard facts dealing with recidivism which, if supported by the record, are virtually impossible to refute, and "almost never contested" (and were not contested in this case).  *Almendarez-Torres, supra.*  They are part and parcel of the prior convictions themselves; they have nothing to do with the crime for which the jury found petitioner guilty; and the matter of prejudice is obvious.  If petitioner's position were correct, his jury would have heard all the evidence of the burglary, theft, and dealing in stolen property, and would also have heard that petitioner had seven prior felony convictions for which he had never been pardoned, and that the

was released from his most recent prison sentence only eight months before the events for which he was charged.[5]

It strains logic to say that the prior convictions are not elements of the crime, as *Apprendi* instructs, but that the other habitualization requirements are. Whether petitioner was in custody on had been released within five years, and whether he had been pardoned, cannot reasonably be said to be elements of the crime of dealing in stolen property. This case is controlled by *Almendarez-Torres*, not *Apprendi*, and petitioner is not entitled to relief on this ground.

Even if the court were inclined to find error in omitting jury participation from the habitualization process, petitioner still would not be entitled to relief. He has not even suggested, much less presented any evidence, that he did not meet the requirements for habitualization. *Apprendi* type claims are subject to harmless error analysis, *United States v. Anderson*, 289 F.3d 1321, 1326 (11th Cir. 2002); *United States v. Pritchett*, 2005 WL 1220647, *1 (11th Cir. 2005), and this court has absolutely no difficulty in finding that if there was any error here, it was harmless. The habitualization requirements - two prior felonies, committed in custody or within five years of release, and with no pardon - were proved by the state with only minimal effort. At the sentencing hearing a fingerprint expert from the sheriff's office identified the petitioner's fingerprints from his arrest card as matching the fingerprints on certified copies of petitioner's prior felony judgments, which were introduced in evidence (exh. I, pp. 26-29). The expert then took a thumbprint from the petitioner, in open court, compared it to the prints on the arrest card, and found a match (*id.* at 30-31). Defense counsel did not challenge the witness. The certified copies of prior judgments showed convictions for seven separate felony offenses, the most recent of which was in 1997 (*id.* at. 32). The state then presented an affidavit under seal from the Office of Executive Clemency of the State of Florida,

---

[5]Petitioner might seriously want to consider the likelihood of his being acquitted of burglary and theft if the jury had been aware of the full extent of his criminal history.

which stated that a thorough search of the records disclosed no restoration of civil rights or pardon for the petitioner (*id.* at 33).  The state then presented a certified letter from the Florida Department of Corrections showing that petitioner's last release from state custody was on February 7, 1999 (*id.* at 34).  The crime for which petitioner was being sentenced was committed on October 7, 1999, eight months after his release.  Defense counsel conceded that the state had presented sufficient evidence to meet the habitualization requirements (*id.* at 36).  Thus, the proof of eligibility for habitualization was not only overwhelming, it was absolute.  Petitioner could not then and cannot now suggest otherwise.

The last step in petitioner's habitualization was taken by the judge, when he determined that for this particular defendant and this particular crime, habitualization was appropriate.  Whether to habitualize when the requisite qualifiers have been proven is properly left to the sentencing judge.  The question does not involve making a factual finding that could be determined by a jury.[6]  Therefore, to the extent that there was any "error" in the court finding the necessary facts to support habitualization, any such error was harmless.  No reasonable jury could have concluded otherwise.  Petitioner is not entitled to habeas relief on this ground.

4.  <u>Ineffective assistance of counsel.</u>

Petitioner next claims five instances of ineffective assistance of counsel: (a) his attorney failed to advise him that he was facing a possible 30 year sentence when he was offered a 7 year plea agreement, (b) his attorney failed to use a peremptory challenge against a jury panel member who was a corrections officer, (c) his attorney conceded his guilt by stipulating to the TV and VCR being pawned by petitioner, (d) his attorney did not appear at sentencing, and only a substitute

---

[6]The Supreme Court's recent decision in *United States v. Booker,* --- U.S.---, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) is not relevant here.  The *Booker* Court found the United States Sentencing Guidelines unconstitutional because the judge made sentence findings that created a  binding sentencing range.  A finding under the Florida habitual felony offender statute makes nothing binding. It simply provides for the possibility of an enhanced sentence, as did the statute in *Almendarez-Torres.*

assistant public defender appeared, and (e) appellate counsel failed to raise a claim of vindictive sentencing.

Respondent contends that all of petitioner's grounds of ineffective assistance are procedurally barred.  Respondent is correct as to the first four grounds.  As to the first four asserted instances of ineffective assistance of counsel, petitioner did not present them in his first 3.850 motion (exh. Y).  He did present them in his second 3.850 motion, but the trial court held that the claims were procedurally defaulted because they should have been raised in the first motion (exh. QQ).[7]  The court relied on Fla. R. Crim. P. 3.850(f), which provides that the court may dismiss a second or successive motion for post-conviction relief if it finds that the

_____

[7]Petitioner contends that the first ground of IAC raised in the instant petition--his attorney failed to advise him that he was facing a possible 30 year sentence when he was offered a 7 year plea agreement--was presented in the first motion for post-conviction relief.  That is incorrect.  In his first motion for post-conviction relief petitioner alleged as follows:

> At the reading of the jury instruction the Honorable Judge Tarbuck asked the defendant would he like a lesser included jury instruction read to the jury on the charge of dealing in stolen property, with the advice of the defendant counsel Mr. Stokes misleading the defendant to believe that dealing in stolen property was a third degree felony, and there is no lesser included instruction to a third degree felony.  The defendant agreed not to have the lesser included instruction read to the jury.

(Exh. Y, pp. 9-10).  Petitioner then explained that his attorney admitted his mistake at sentencing because the crime is a second degree felony for which there is a lesser included offense.  He further contended that if he had known this, he would have requested a lesser included instruction, and would likely have been found guilty of the lesser offense, thereby making his habitual felony offender sentence shorter.

> In his second motion for post-conviction relief petitioner claimed:

> Defense counsel misinformed defendant as to the nature of the charges filed against him and the penalty he faced which directly affected his decision to not accept a plea offer from the state.

(Exh. PP, p. 6).  That is not the same claim.  The two claims are similar in that they involve the same alleged error - counsel's misapprehension of the degree of the crime - but they involve different measures of prejudice.  That is, in the first version petitioner says he would have been convicted of a lesser sentence.  In the second he says he would have accepted a plea bargain.  In both cases, he had to prove both the attorney's error and the prejudice.  He did not present the prejudice concerning the lost plea bargain to the trial court in the first motion, and the trial court therefore did not have an opportunity to decide the issue.  When petitioner raised the lost plea bargain in his second motion, it was too late.  It is the lost plea bargain claim that petitioner raises here.  As discussed, the trial court found that the issue was procedurally defaulted, and this court will not consider it.

successive motion fails to allege new or different grounds and the prior determination was on the merits, or if the failure to assert the grounds in the prior motion constituted an abuse of the procedure.  The court held that it was an abuse of the procedure to raise new grounds that were known or could have been known when the first motion was filed, citing *Ramirez v. State*, 822 So.2d 593 (Fla. 1st DCA 2002).  The court further found that petitioner had not offered any reason for his failure to raise these ineffective assistance of counsel claims in his first motion for post-conviction relief, even though he had made a different ineffective assistance of counsel claim initially.  The court therefore found that these four grounds of ineffective assistance of counsel were procedurally barred.

This court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. at 734-35 and n. 1, 111 S.Ct. at 2555. In this case, the state procedural rule was not applied in an "arbitrary or unprecedented fashion," *Judd, supra*.  Petitioner has made none of the requisite showings to excuse his default.  Therefore this court should not review the first four grounds of ineffective assistance raised in this petition.

Petitioner's fifth ground of ineffective assistance of counsel involves his appellate counsel.  Petitioner faults his appellate counsel for failing to raise two issues on appeal: vindictive sentencing, and ineffective assistance of trial counsel based on trial counsel's failure to object to the allegedly vindictive sentence.

The respondent concedes that petitioner raised his ineffective assistance of appellate counsel ("IAAC") claim in a state petition for habeas corpus in the Florida First District Court of Appeal (exh. LL).[8]  Relief was denied without opinion (exh. NN).

---

[8]In fact, petitioner did <u>not</u> present the issue of appellate counsel's failure to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to object to the allegedly vindictive sentence (*see* exh. LL).  Notwithstanding this fact, the claim is without merit and should be denied because petitioner cannot show prejudice.  In Florida, even in those rare instances when claims of ineffective assistance are cognizable on direct appeal, they are not required to be raised in that forum. *See Blanco v. Wainwright*, 507 So.2d 1377, 1384 (Fla. 1987).  Rather, such claims are appropriately raised in a Rule 3.850 motion.  *See, e.g., Doss v. State*, 644 So.2d 124, 126 (Fla. 1st DCA 1994).  Thus, petitioner cannot show he was prejudiced by appellate counsel's failure to raise the IAC claim on

Respondent appears to assert a procedural default defense, arguing that the state court's denial of relief was on the basis of a procedural bar.  In support of this position, respondent argues as follows:

> Petitioner concedes that his trial [counsel] never objected to his sentence on grounds of vindictiveness. (Ex. WW at 28).  Under Florida law because the trial counsel did not make a timely objection, the issue was not preserved for appellate review.  *Maddox v. State*, 760 So.2d 89 (Fla. 2000).  Applying Florida law, this claim would be procedurally barred because it was not preserved for review.  Accordingly, the denial of Petitioner's state Petition for Writ of Habeas Corpus was not erroneous.
>
> Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice.

(Doc 5, pp. 45-46).  Respondent additionally asserts that the claim presents only an issue of state law which is not cognizable under federal habeas review.  Respondent also addresses the merits of the claim.

As respondent points out, federal habeas relief is not available to reexamine state decisions on its own procedural rules, *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), but that is not the issue here.  Petitioner does not argue that the court erred, but that his appellate counsel was ineffective for failing to raise a sentencing issue on appeal.  *See Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318, 1327 n. 10 (11th Cir. 2002) (noting that while the underlying issue may be a state matter, the real issue is whether counsel was ineffective in failing to assert a valid state law claim).  Thus, a federal constitutional claim has been presented.

Petitioner raised his IAAC claim in his state habeas petition.  The First DCA denied relief without written opinion.  This court is mindful that it cannot presume that the state court ignored its own procedural rules when it issues a summary denial of relief.  *See Kight v. Singletary*, 50 F.3d 1539, 1544-45 (11th Cir. 1995)

---

direct appeal, when petitioner himself could have raised the claim in a Rule 3.850 motion.  The remainder of this court's discussion of petitioner's IAAC claim will treat it as though the claim raises only one instance of IAAC--appellate counsel's failure to present the vindictive sentence issue on appeal.

(applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d at 209 (applying bar where state court did not rule on claims presented).  However, in the instant case it does not appear petitioner's claim was barred by state procedural rules.  The case of *Maddox v. State*, 760 So.2d 89 (Fla. 2000) cited by respondent deals with unpreserved sentencing errors raised on direct appeal.  In *Maddox*, the Florida Supreme Court "address[ed] only the question of whether unpreserved sentencing errors should be corrected in those noncapital criminal appeals filed in the window period between the effective date of [Florida's Criminal Appeal Reform Act of 1996] and the effective date of [the Florida Supreme Court's] recent amendment to rule 3.800(b) in [*Amendments to Florida Rules of Criminal Procedure 3.111(e) & 3.800 & Florida Rules of Appellate Procedure 9.020(h), 9.140, & 9.600*, 761 So.2d 1015 (Fla. 1999),  *reh'g granted*, 761 So.2d 1025 (Fla. 2000) ("Amendments II")].[9]  The court held that certain unpreserved sentencing errors were fundamental and could be addressed for the first time on appeal if they fell within that window period. The *Maddox* opinion does not support the proposition that a defendant is procedurally barred from raising a claim of ineffective assistance of appellate counsel in a state habeas proceeding based on counsel's failure to raise a sentencing error on appeal, when that sentencing error was not preserved below.  To the extent the state habeas court's denial of relief in this case was based on a finding that the sentencing error was not preserved for appellate review, this decision essentially rested upon the substantive elements of proof necessary for establishing a constitutional claim of denial of effective assistance of appellate counsel.   In other words, the fact that the error was unpreserved for appeal goes to the issue of whether appellate counsel could be deemed deficient for failing to raise it.  This court has found no authority for the proposition that in Florida, trial counsel's failure to preserve a sentencing error for appeal bars a defendant from later raising an ineffective assistance of appellate

---

[9]The effective date of Amendments II is January 1, 2001.  Fla. R. Crim. P. 3.800.

counsel claim based on appellate counsel's failure to raise the unpreserved error on appeal.  To the contrary, Florida courts have routinely addressed such IAAC claims on the merits.  *See, e.g. Owen v. Crosby*, 854 So.2d 182 (Fla. 2003) (denying relief on the merits; holding that appellate counsel cannot be considered ineffective for failing to raise issues that were unpreserved and do not constitute fundamental error.); *Downs v. Moore*, 801 So.2d 906, 910 (Fla. 2001) (same).  Accordingly, this court declines to find that the state court's summary denial of relief on petitioner's IAAC claim was on the grounds of an independent and adequate state ground of procedural bar.

>   A.  Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  "The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

>   We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v.*

> *Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a
> particular defense ultimately proved to be unsuccessful demonstrate
> ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

The standards and guidelines for judging a claim of ineffective assistance of counsel are the same for charges relating to both trial and appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 287-89, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2000); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).  Therefore, to review a claim of ineffective assistance of appellate counsel, the court must examine whether there was a constitutional deficiency in counsel's failure to raise an issue and whether that deficiency actually prejudiced petitioner.

Where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165, 115

S.Ct. 2624, 132 L.Ed.2d 865 (1995); *Francois v. Wainwright*, 741 F.2d 1275, 1285-86 (11th Cir. 1984).  Further, appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1382, 1291 (11th Cir. 1984)), *cert. denied*, 531 U.S. 1131, 121 S.Ct. 892, 148 L.Ed.2d 799 (2001).  Even meritorious arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal.  *Nyhuis*, 211 F.3d at 1344 (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)).

B.  Review of State Court Decision

As previously discussed, the state habeas court summarily denied relief on this claim without written opinion.  This was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

Petitioner alleges the following in support of his claim that his sentence was vindictive:

> During trial the trial court told trial counsel to relay a plea offer made by the state.  Trial counsel did so and petitioner stated he would take the plea if it was concurrent to the time he was already serving.  Trial court refused stating, "Your not getting no free ride" so petitioner refused the plea and went to trial.  At sentencing the trial court sentenced the petitioner to 30 years as an HFO.  This is about (3) three times the amount offered by the state.  At no time did trial counsel object to said sentence.

(Doc. 1, Mem. of Law, p. 28).

Assuming, without deciding, that the appellate court would have heard the vindictive sentencing issue on its merits even though it was unpreserved, petitioner cannot establish that it was objectively unreasonable for appellate counsel to decline to raise it.  The trial transcript reveals that after the jury was impaneled, the court held a conference outside the presence of the jury to discuss, among other things, the state's request for a continuance.  Contrary to petitioner's version of events, the following is what actually transpired:

> THE COURT: My concern is that we've already impaneled the jury, and were I now to grant the State's motion for continuance, would this not

constitute subjecting the defendant to double jeopardy?  Wait.  Before we get into that, did you hear the State attorney offer --

MR. STOKES [Defense Counsel]: Yes, Your Honor, I haven't had an opportunity to discuss that with him.

THE COURT: Do you wish to do it now, to see if it can be disposed of on that basis?

MR. STOKES: Yes, Your Honor, if I may have a minute with my client.

THE COURT: Okay. . . .

. . . .

THE COURT: Lee [prosecutor], it might be helpful if you tell Defense Counsel what they are looking at as far as a sentence.

MR. ROBINSON [Prosecutor]: The guidelines would be a minimum of 70.35 months.

THE COURT: 70.35 is the minimum?

MR. ROBINSON:  Right.  And he qualifies as HFO, so 30 years would be the maximum.

THE COURT: Okay.  Minimum is 70.35, HFO would be 30 years.

MR. ROBINSON: Yes, sir.

THE COURT: And if he goes, if I do grant the motion for continuance, if I can, and I do grant the motion for continuance and we go to trial and he's convicted as charged, what is the maximum?

MR. ROBINSON: The maximum in that case, Judge, would be -- I believe it would be up to 65 years on burglary of a dwelling.  He's HFO.  He's also prison releasee reoffender.  He would do 15 period on that unless the Court sentenced him to 30 HFO.

THE COURT: So the minimum of 70.35 up to 65 years he can get?

MR. ROBINSON: Yes, sir.  If he was convicted as charged, the minimum would be 15 years.

THE COURT: With a minimum of 15 years?

MR. ROBINSON: Yes, sir, as charged if he were convicted.

THE COURT: What you're offering him now is less than six years?

MR. ROBINSON: I've offered him a plea straight up to the dealing to the 70.35 to 30.

MR. STOKES: Your Honor, my client is currently under a seven year sentence on a VOP from this Court.  Would that be concurrent with -- any sentence he received be concurrent with that VOP sentence?

THE COURT: I'm not going to give him a free ride, no.

MR. STOKES: Your Honor, at this time, it is my understanding that although we impaneled the jury and we swore the venire, we did not swear this particular jury.

THE COURT: You're wrong.  We swore this jury.

MR. STOKES: Your Honor, at this time -- you don't want to do a plea?

THE DEFENDANT: (Shakes head negatively.)

(Exh. G, pp. 51-55).  After petitioner was convicted of dealing in stolen property, he was sentenced to 30 years imprisonment as an habitual felony offender.

The record neither supports an inference of the judge's vindictiveness nor indicates that he gave any improper weight to petitioner's failure to accept the plea offer.   The trial judge simply inquired whether defense counsel had had an opportunity to discuss the state's plea offer with his client.  When counsel indicated he had not, the judge, at counsel's request, allowed him time to do so.  The judge then clarified for petitioner the sentence the state was recommending as part of the plea bargain, and whether or not that sentence would be concurrent to the sentence petitioner was then serving.  The court also clarified for petitioner the minimum and maximum sentences that could be imposed if petitioner went to trial, was convicted as charged, and was sentenced as an HFO.  After petitioner was convicted of dealing in stolen property, the court imposed a 30-year sentence as an HFO.   At sentencing

the trial court identified objective reasons for imposing the 30-year sentence:  (1) petitioner had seven prior felony convictions, (2) petitioner was a danger and threat to society, (3) aside from committing the prior felonies, petitioner had violated his probation and community control several times, leading the court to conclude that petitioner would engage in further criminal activity, and (4) petitioner's criminal record indicated that his criminal activity was escalating and becoming more severe (exh. I, Tr. of Sentencing Proceeding held on 9/20/00, pp. 6-7).  Petitioner's sentence was within the permitted sentencing guideline range.  Moreover, the sentence was not "three times the amount offered by the state."  Indeed it was within the range (albeit the maximum) of that which was part of the plea offer.[10]

Petitioner has not established that appellate counsel was objectively unreasonable in considering the vindictive sentencing issue to be without merit and declining to raise it on direct appeal.  Accordingly, the state court's denial of relief on petitioner's IAAC claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

5.   Double jeopardy.

Petitioner claims his constitutional rights to trial by jury, due process, and protection against double jeopardy were violated when the trial court announced petitioner "not guilty" as to all charges, discharged the jury and then announced that he was changing the verdict in Count 3 to guilty.  The factual background of this claim is as follows.

When the jury verdict in this case was published, the court mistakenly read the verdict on Count 3--dealing in stolen property--as "not guilty."  The court then thanked the jurors and told them they were free to go.  The record is unclear on whether the jury was still present when the next line of the transcript began:

---

[10]Even if petitioner's sentence exceeded the rejected sentence, petitioner's claim would still fail.  As succinctly expressed by one of Florida's appellate courts:  "When an accused voluntarily chooses to reject a plea offer, he retains no right to the rejected sentence.  By rejecting the offer of a lesser sentence, the accused assumes the risk of receiving a harsher sentence.  A disparity between the sentence received and the earlier plea offer will not alone support a finding of judicial vindictiveness."  *Gardner v. State*, 699 So.2d 798, 800 (Fla. 4th DCA 1997) (citations omitted).

SECURITY OFFICER: I think there may be some discretion [sic].  The foreperson says the last count was guilty.

THE COURT: I'm sorry.  Count 3, guilty of dealing in stolen property as charged.  I'm sorry.  Okay.

Anything to say before sentence is imposed?

(Exh. E, p. 173).  The jury verdict form (exh. H), although a somewhat indistinct copy, shows that the jury found petitioner guilty on Count 3.  *Id.*  The court then ordered a presentence investigation.  Neither defense counsel nor petitioner challenged the court's apparent confusion or immediate correction.

Petitioner here contends that the jury found him not guilty of all charges, that the jury was then "reconvened," and a guilty verdict was rendered.  He does not dispute the verdict form, but contends that when the court read the verdict, he was pronounced not guilty on all three counts, and this was binding.  When he was then pronounced guilty on Count 3, his double jeopardy rights were abridged.  Respondent contends that this is a misreading of the transcript.  He also contends that this claim is procedurally barred because it was not presented until petitioner's second motion for post-conviction relief.

Respondent is correct on the procedural bar.  The claim was raised for the first time in petitioner's second motion for post-conviction relief, and the trial court found it to be procedurally barred as it could have and should have been argued in petitioner's first Rule 3.850 motion.  Petitioner responds that double jeopardy is a fundamental error, and can be raised in a motion for post-conviction relief at any time.  He therefore implies that the Rule 3.850 court misapplied the procedural bar when it found the double jeopardy claim raised in his second Rule 3.850 motion to be procedurally barred.[11]  Petitioner is incorrect.  Florida courts routinely apply the

---

[11]In support of his position, petitioner cites *Johnson v. State*, 460 So.2d 954 (Fla. 5th DCA 1984).  That case holds that fundamental error in the nature of violation of a defendant's substantive constitutional double jeopardy rights may be presented for the first time on appeal or collaterally attacked in post conviction proceedings.  It does not stand for the novel proposition that a double jeopardy claim can be raised in a second or successive post-conviction motion when it could have and should have been raised in the first.

successive motion procedural bar to all types of alleged errors, regardless of their nature.  *See* Fla.R.Crim.P. 3.850(f); *Ramirez v. State*, 822 So.2d 593 (Fla. 2nd DCA 2002); *Ragan v. State*, 643 So.2d 1175 (Fla. 3rd DCA 1994).  Petitioner has made none of the requisite showings to excuse his default.  Therefore this court should not review the claim.

If this court were to consider this claim on its merits, it would fail.  The record clearly shows that the court made a mistake in reading the verdict form, and immediately corrected it when so informed.  That was all that happened.  Petitioner claims that the jury was somehow reconvened, but the record does not support this assertion.  If petitioner's argument is carried to its logical extent, the court could just as well have misread the verdict form on the first two counts, finding petitioner guilty, and, by petitioner's logic, this would have been binding.  The written verdict form speaks for itself.  This court will not accept the idea that a judge can override a jury's verdict by misreading the verdict form.  Petitioner is not entitled to federal habeas relief on this ground.

Accordingly, it is respectfully RECOMMENDED that the Title 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Ronald Wayne Bush* in the Circuit Court of Escambia County, Florida, case no. 99-4328, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 9th day of June, 2005.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO PARTIES</u>

**Any objections to these findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 701 (11th Cir. 1988).**